**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

|  |  |
|---|---|
| SMARTER AGENT, LLC, | Civil Action No.: ___6:22-cv-0052___ |
| Plaintiff, | |
| v. | **Jury Trial Demanded** |
| OJO LABS INC. and MOVOTO, INC., | |
| Defendants. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Smarter Agent, LLC ("Smarter Agent" or "Plaintiff"), by its undersigned attorneys, with knowledge in respect to its own acts and on information and belief as to other matters, alleges as follows:

## NATURE OF THIS ACTION

1.      Smarter Agent brings this action to compel Defendants OJO Labs Inc. and Movoto, Inc. (collectively "Defendants") to compensate Smarter Agent for patent infringement.

2.      Smarter Agent invented systems and methods generally related to location-aware search engines and related storage technology.  Smarter Agent has offered for sale software applications embodying or related to those inventions.

3.      Smarter Agent's systems and methods make location-based search queries more efficient by allowing, for a location-based search focused in time and occurring at a specific location, a user to focus a location-based search query without leaving the context of the location-based search.

4.     Smarter Agent has provided products and services to real estate brokers and brokerages, including mobile apps and Smarter Agent's "Tech Connect" program.  Smarter Agent's products and services have won multiple industry awards.  These software products are compatible with both the iOS and Android mobile platforms for wireless devices, such as smartphones and tablets.

5.     In 2018, Keller Williams purchased Smarter Agent Mobile, LLC, a spin-off of Smarter Agent.

6.     Smarter Agent created, through its own extensive expenditure of time, labor, effort, skill, and money, various products and services built on the technology described in or related to the Patents-in-Suit (defined below).

## PARTIES

7.     Smarter Agent is a private company with a principal place of business at 9 Signal Hill Drive, Voorhees, New Jersey 08043.

8.     Defendant OJO Labs Inc. ("OJO") is a Delaware corporation having its principal place of business at 1007 South Congress Avenue, Building 9, Austin, Texas 78704-8707.

9.     Defendant Movoto, Inc. ("Movoto") is a California corporation having its principal place of business at 1900 South Norfolk Street, Suite 350, San Mateo, California 94403.  Movoto is a wholly owned subsidiary of OJO.

10.     On information and belief, OJO and Movoto acted in concert concerning the conduct complained of herein such that the actions of one can be attributed to the other and vice versa.  For example, Movoto is branded as "movoto by OJO" on its website.



https://www.movoto.com/.

11.     Further, a primary function of Movoto's services is to connect customers with OJO agents.



*Id.*

12.     In addition, in the "About" section of Movoto's website, Movoto's services are attributed to OJO:



https://www.movoto.com/about/.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a) because it raises a federal question under U.S. patent law, including 35 U.S.C. § 271.

14.     Venue is proper in this District under 28 U.S.C. § 1400(b) and 28 U.S.C. § 1391(b) because Defendants committed acts of infringement in this District and because Defendants maintain one or more regularly established places of business in this District.

15.     This Court has personal jurisdiction over Defendants at least because Defendants conduct business in this District, including actions that constituted prior infringement of Smarter Agent's patents.  For example, Defendants engaged in infringing acts at their established place of business in this District.

## THE PATENTS-IN-SUIT

16.     On August 20, 2003, inventors Brad and Eric Blumberg filed U.S. Patent Application No. 10/644,060 ("the '060 Application").  The '060 Application was duly examined and issued as U.S. Patent No. 7,457,628, entitled "System and Method for Providing Information Based on Geographic Position," on November 25, 2008 ("the '628 Patent").

17.     Messrs. Blumberg assigned the '628 Patent to Smarter Agent, Inc.  *See* USPTO Reel/Frame No. 020018/0796.   Smarter Agent, Inc. assigned the '628 Patent to Smarter Agent, LLC.  *See* USPTO Reel/Frame No. 020024/0532.

18.     Smarter Agent owns the '628 Patent and has the full and exclusive right to bring actions and recover past, present, and future damages for Defendants' infringement.

19.     The '628 Patent is valid and enforceable.  A copy of the '628 Patent is attached as Exhibit A and is incorporated herein by reference.

20.     On November 21, 2008, Messrs. Blumberg filed U.S. Patent Application No. 12/275,683 ("the '683 Application").  The '683 Application was duly examined and issued as U.S. Patent No. 8,442,550, entitled "System and Method for Providing Information Based on Geographic Position," on May 14, 2013 ("the '550 Patent").

21.     Messrs. Blumberg assigned the '550 Patent to Smarter Agent, Inc.  *See* USPTO Reel/Frame No. 030214/0067.   Smarter Agent, Inc. assigned the '550 Patent to Smarter Agent, LLC.  *See* USPTO Reel/Frame No. 030214/0062.

22.     Smarter Agent owns the '550 Patent and has the full and exclusive right to bring actions and recover past, present, and future damages for Defendants' infringement.

23.     The '550 Patent is valid and enforceable.  A copy of the '550 Patent is attached as Exhibit B and is incorporated herein by reference.

24.     On April 30, 2014, Messrs. Blumberg filed U.S. Patent Application No. 14/266,144 ("the '144 Application").  The '144 Application was duly examined and issued as U.S. Patent No. 9,183,584, entitled "System and Method for Providing Information Based on Geographic Position," on November 10, 2015 ("the '584 Patent").

25.     Messrs. Blumberg assigned the '584 Patent to Smarter Agent, Inc.  *See* USPTO Reel/Frame No. 033524/0135.   Smarter Agent, Inc. assigned the '584 Patent to Smarter Agent, LLC.  *See* USPTO Reel/Frame No. 033524/0143.

26.     Smarter Agent owns the '584 Patent and has the full and exclusive right to bring actions and recover past, present, and future damages for Defendants' infringement.

27.     The '584 Patent is valid and enforceable.  A copy of the '584 Patent is attached as Exhibit C and is incorporated herein by reference.

28.     On October 26, 2015, Messrs. Blumberg filed U.S. Patent Application No. 14/922,428 ("the '428 Application").  The '428 Application was duly examined and issued as U.S. Patent No. 9,754,317, entitled "System and Method for Providing Information Based on Geographic Position," on September 5, 2017 ("the '317 Patent").

29.     Messrs. Blumberg assigned the '317 Patent to Smarter Agent, Inc.  *See* USPTO Reel/Frame No. 036883/0583.   Smarter Agent, Inc. assigned the '317 Patent to Smarter Agent, LLC.  *See* USPTO Reel/Frame No. 036883/0588.

30.     Smarter Agent owns the '317 Patent and has the full and exclusive right to bring actions and recover past, present, and future damages for Defendants' infringement.

31.     The '317 Patent is valid and enforceable.  A copy of the '317 Patent is attached as Exhibit D and is incorporated herein by reference.

32.     On August 23, 2012, Messrs. Blumberg filed U.S. Patent Application No. 13/592,411 ("the '411 Application").  The '411 Application was duly examined and issued as U.S. Patent No. 9,002,371, entitled "Position-Based Information Access Device and Method of Searching," on April 7, 2015 ("the '371 Patent").

33.     Messrs. Blumberg assigned the '371 Patent to Smarter Agent, Inc.  *See* USPTO Reel/Frame No. 030876/0694.   Smarter Agent, Inc. assigned the '371 Patent to Smarter Agent, LLC.  *See* USPTO Reel/Frame No. 030876/0729.

34.     Smarter Agent owns the '371 Patent and has the full and exclusive right to bring actions and recover past, present, and future damages for Defendants' infringement.

35.     The '371 Patent is valid and enforceable.  A copy of the '371 Patent is attached as Exhibit E and is incorporated herein by reference.

36.    On March 23, 2015, Messrs. Blumberg filed U.S. Patent Application No. 14/665,444 ("the '444 Application").  The '444 Application was duly examined and issued as U.S. Patent No. 9,754,333, entitled "Position-Based Information Access Device and Method of Searching," on September 5, 2017 ("the '333 Patent").

37.    Messrs. Blumberg assigned the '333 Patent to Smarter Agent, Inc.  *See* USPTO Reel/Frame No. 042181/0430.   Smarter Agent, Inc. assigned the '333 Patent to Smarter Agent, LLC.  *See* USPTO Reel/Frame No. 042181/0472.

38.    Smarter Agent owns the '333 Patent and has the full and exclusive right to bring actions and recover past, present, and future damages for Defendants' infringement.

39.    The '333 Patent is valid and enforceable.  A copy of the '333 Patent is attached as Exhibit F and is incorporated herein by reference.

40.    On October 14, 2005, Messrs. Blumberg filed U.S. Patent Application No. 11/249,733 ("the '733 Application").  The '733 Application was duly examined and issued as U.S. Patent No. 7,599,795, entitled "Mobile Location Aware Search Engine and Method of Providing Content for Same," on October 6, 2009 ("the '795 Patent").

41.    Messrs. Blumberg assigned the '795 Patent to Smarter Agent, Inc.  *See* USPTO Reel/Frame No. 020018/0796.   Smarter Agent, Inc. assigned the '795 Patent to Smarter Agent, LLC.  *See* USPTO Reel/Frame No. 020024/0532.

42.    Smarter Agent owns the '795 Patent and has the full and exclusive right to bring actions and recover past, present, and future damages for Defendants' infringement.

43.    The '795 Patent is valid and enforceable.  A copy of the '795 Patent is attached as Exhibit G and is incorporated herein by reference.

44.     On October 5, 2009, Messrs. Blumberg filed U.S. Patent Application No. 12/573,537 ("the '537 Application").  The '537 Application was duly examined and issued as U.S. Patent No. 8,473,199, entitled "Mobile Location Aware Search Engine and Method of Providing Content for Same," on June 25, 2013 ("the '199 Patent").

45.     Messrs. Blumberg assigned the '199 Patent to Smarter Agent, Inc.  *See* USPTO Reel/Frame No. 029166/0526.   Smarter Agent, Inc. assigned the '199 Patent to Smarter Agent, LLC.  *See* USPTO Reel/Frame No. 029166/0554.

46.     Smarter Agent owns the '199 Patent and has the full and exclusive right to bring actions and recover past, present, and future damages for Defendants' infringement of the '199 Patent.

47.     The '199 Patent is valid and enforceable.  A copy of the '199 Patent is attached as Exhibit H and is incorporated herein by reference.

48.     Smarter Agent has identified on its website that its software products are covered (and were covered) by the '795 Patent, the '628 Patent, the '199 Patent, and the '550 Patent since at least October 2015.

49.     Smarter Agent has identified on its website that its software products are covered (and were covered) by the '371 Patent since at least December 2015.

50.     Smarter Agent has identified on its website that its software products are covered (and were covered) by the '584 Patent, the '317 Patent, and the '333 Patent since at least February 2019.

50.     The '628, '550, '584, '317, '371, '333, '795, and '199 Patents are collectively referred to as the "Patents-in-Suit."

51.     On information and belief, Defendants had knowledge of Smarter Agent and each of the Patents-in-Suit during the pendency of each of the Patents-in-Suit.

52.     As described below, Defendants infringed the Patents-in-Suit by at least using the "Movoto Real Estate by OJO" home search app or other similar home search apps ("the app"), and by advertising, promoting, instructing, and facilitating the use of infringing devices and/or systems, such as a smartphone having the app installed on it (the "Accused System" or "Accused Instrumentality").  Defendants' acts of infringement occurred within this District and elsewhere throughout the United States.  *See* Claim Charts for the Patents-in-Suit, attached as Exhibits I–P (charting a mapping of each element of exemplary claims of the Patents-in-Suit against the Movoto Real Estate by OJO home search app), which Exhibits are incorporated herein by reference.  These Claim Charts attached describe functionality that Defendants used during the damages period.

## THE SMARTER AGENT INVENTIONS

53.     The Patents-in-Suit arose from the inventive work of Brad and Eric Blumberg. Messrs. Blumberg recognized numerous issues with prior search systems that required a user to be physically located at a fixed computer or other terminal to access information databases.  A key innovation of the Patents-in-Suit, developed long before the ubiquity of personal mobile electronic communication devices such as smartphones, was to enable a user's location to be identified by a remote information system via geolocation.  That system could then provide information to the user device *at* the user's location and with such information being associated with the user's specific location.

54.     For example, prior to the Patents-in-Suit, if an individual spotted a piece of real estate of interest, such as a house for sale, they would need to memorize or write down the address of the house, travel to a computer or other terminal elsewhere, and search a database of real estate

listings for information about the house. *See, e.g.*, '628 Patent at 2:13-19 & 2:66-3:11.[1]  In the systems and methods taught by the Patents-in-Suit, the user's location is automatically made available to a remote database via the user's portable device wherever the user is located when making the data request. *Id.* at 3:48-55.  The user standing near a house for sale can thus use a portable device to immediately access information about the house as well as information related to nearby properties. *Id.* at 14:46-15:36.  The user can also input information into the user device, storing information in the information system or requesting further information from the information system, such as specific information about nearby landmarks. *See, e.g.*, '795 Patent at 5:25-39.  The above features and aspects reflect key innovations over conventional real estate search systems, in which information generally traveled in one direction: from a Realtor to a customer.

55.     The inventions claimed in the Patents-in-Suit are centered on, or directed to, at least three technical components: (1) the user's portable device (referred to as a "wireless device," "electronic device," "mobile electronic device," or "handheld wireless device" in the claims) having a user interface that includes menus and icons, (2) geolocation technology to identify the location of the user's portable device, and (3) an "information system" that stores information in a database (which may be updated dynamically), the information system located remotely from the user's device.  The innovations of the Patents-in-Suit allow immediate access to location-specific information while a user is out and about, as well as the ability for a user device to provide information to a remotely-located server, and again these innovations were conceived years before smartphone technology became commonplace.  The inventors of the Patents-in-Suit foresaw the

---

[1] Exemplary citations are made to the '628 Patent, which is the earliest-issued of the Patents-in-Suit.  The disclosure of the '628 Patent is thus applicable to all Patents-in-Suit.

need to access information "on the fly" (*e.g.*, while a user is viewing a house for sale), and the eight Patents-in-Suit asserted in this action claim various implementations of that technology.

56.     A prototype of the technology developed by Messrs. Blumberg appears below.



57.     The prototype was constructed using a Palm VIIx personal digital assistant combined with a GPS clip from a different manufacturer, and new software written to connect the assembled hardware components and communicate with a remote real estate database.   The

inventors of the Patents-in-Suit thus anticipated the use of a customized software application on a GPS-enabled mobile device for real estate searching several years before the advent of smartphone apps.

## THE CLAIMS OF THE PATENTS-IN-SUIT ARE NOT DRAWN TO ABSTRACT IDEAS

58.     The claims of the Patents-in-Suit are drawn to patent-eligible subject matter under 35 U.S.C. § 101.  The '371 Patent, the '584 Patent, the '317 Patent and the '333 Patent issued after the Supreme Court's decision in *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014), and thus were examined by the USPTO under the post-*Alice* standard.  For example, Section 101 was specifically referenced in the communications between the Examiner and the Applicant during the prosecution of the '317 Patent.  The Examiner's determination that the post-*Alice* patents were drawn to patent-eligible subject matter is applicable to all of the Patents-in-Suit.

59.     The claims of the Patents-in-Suit are directed to a network architecture and specific technical features.  The claims generally include an "information system" and a user device, such as a mobile device, that is located via geolocation.  Several of the claims also rely on specific user interface functionality, such as the use of icons and first and second menus.  The Patents-in-Suit thus involve physical network communications, discrete hardware components, and technical solutions such as geolocation and dynamic database management.

60.     The "information system" envisioned by the Patents-in-Suit is an improvement over prior art, conventional sources of information for real estate listings, such as printed books and static databases.  For example, the '628 Patent describes an information system including a "seamless" grid, meaning the information is updated both spatially and temporally, which allows information to "be updated in real-time."  '628 Patent at 9:32-35.  The '628 Patent explains that such a "seamless" grid "may be highly desirable as it allows the user of an electronic device to

query the database containing the information to receive information about the current conditions of any particular location they wish." *Id.* at 9:52-56. The '628 Patent further explains that "the invention includes a method of creating a seamless database including obtaining information from a number of different sources associated with a number of locations. This information may, but need not, define a seamless grid." *Id.* at 11:42-46. This disclosure illustrates another technical improvement over conventional unreliable search systems.

61.     The Patents-in-Suit also describe "providing" information via a specific mobile user interface and transmitting and receiving data using radio technology, bar codes, laser emitters, optical sensors, radar, and via various forms of physical networks. *See, e.g.*, '628 Patent at 5:34-58, 6:51-63 & 14:65-67. These physical technical elements are not "abstractions," and communication via these methods requires specific technical implementations.

62.     The Patents-in-Suit are also directed to an improved network. As discussed above, the use of electronic networks to exchange information concerning real estate in the prior art had several problems in terms of reliability and usability. Prior art systems and methods were limited by unreliable human memory and communication, static and incomplete sources of information, and the inability to transmit certain forms of information (such as graphics and information about nearby properties) via telephone. The intrinsic record of the Patents-in-Suit describes these problems:

> The traditional method of buying real estate requires the prospective purchaser to transact through a real estate broker for virtually every aspect of the transaction, from finding a desired property to completing the sale. Often the most difficult part of the process, from the buyer's perspective, is locating a desired piece of real estate. There are generally two methods employed to locate a desired piece of property.
>
> The first method relies solely on the real estate broker to use his or her contacts, including listing services, to locate property that meets the buyer's specifications. The second is more random, in that if a

> buyer happens to pass a piece of property that is displaying a "for
> sale" sign, the buyer can write down the phone number shown on
> the sign to later inquire about the property, which then places the
> transaction totally within the broker's hands, as the broker controls
> all the information relating to the property (e.g., size and cost).

'628 Patent at 2:3-19.

63.     The Patents-in-Suit solve these technical problems, in part, through the use of location-based network technology, which is an improvement over earlier telephone network-based real estate search processes.

64.     The improvements of the Patents-in-Suit would be readily apparent to a person skilled in the art.  A buyer orally describing her location to a Realtor by phone is not equivalent to providing data, via a user mobile electronic device, to an information system that stores and provides information related to a geographic location associated with a position of the mobile electronic device.  The inconvenience of manually searching real estate listings by remembering one's location bears no resemblance to the geolocation technology disclosed by the Patents-in-Suit.  *See* '628 Patent at 2:13-19, 2:66-3:11 & 3:48-55.

65.     Similarly, a real estate agent providing information via a communications network cannot do so in the claimed manner without using geolocation technology to automatically pinpoint the location of the user device and automatically obtain information specific to that location.  In other words, the agent is constrained by the prior art problems identified and solved by the Patents-in-Suit—reliance on customer memory and the ability to locate and use a conventional telephone to contact the real estate agent.  Further, a Realtor, map, phone book, and MLS book cannot be considered an "information system" at least because such printed information sources references cannot be "dynamically updated" as required by certain of the asserted claims.

A dynamically updated database is a technical improvement over a real estate agent reading from a static book.

66.     Further, a "menu" displayed on the user interface of a mobile device is not analogous to information provided orally by telephone.  Providing a user interface within a networked communication system is an improvement over prior networked systems that relied on slower and less reliable human communication.  Nor is a buyer orally conveying search preferences the type of technical query envisioned by the Patents-in-Suit.  Again, automated search technology is an improvement over using a communication network to request that a real estate agent look up information in printed material.

67.     There are thus numerous differences between a prior art telephone-based real estate search process and the Patents-in-Suit, all of which involve discrete technical solutions that set the claims apart from abstract ideas.  Because of this, the Patents-in-Suit claim *improvements* in a *computer network*, which is patent eligible.  The inventors of the Patents-in-Suit recognized a problem in using existing telecommunications networks to obtain location-specific information and developed an improvement to the preexisting approach by utilizing specific geolocation, mobile, database, and user interface technology.  This improved network technology is not an abstract idea.

68.     The Patents-in-Suit also improve network security.  While communications over a telephone network are generally not secure, several claims of the Patents-in-Suit envision using encryption to secure the location-based communications at issue.  *See, e.g.*, '628 Patent at 20:22-30.

69.     The Patents-in-Suit teach improvements in the *functioning of a network* to provide location-centric information.  Preexisting networks, without electronic database functionality,

geolocation technology, or dynamic search technology, could not process communications and information in the way that the improved system of the Patents-in-Suit does. The Patents-in-Suit add new functionality to the network, such as geolocation and a user interface enabling two-way updating of information, that makes the network itself operate in an improved manner, and such new functionality constitutes patent-eligible improvements over conventional systems.

70. The allegations above apply to each of the Patents-in-Suit. Therefore, the Patents-in-Suit are not drawn to an abstract idea.

## THE PATENTS-IN-SUIT CONTAIN INVENTIVE CONCEPTS

71. As set forth in the Declaration from Dr. Ryan Garlick, which is incorporated by reference ("Garlick Decl."), backed by Dr. Garlick's expertise both in computer networking and real estate, the Patents-in-Suit contain and are directed to inventive concepts.

72. As a general matter, the inventors of the Patents-in-Suit recognized the possibility of using mobile devices for complex, location-based search operations long before such functionality became commonplace via the advent of smart phones. Garlick Decl. ¶ 11. The best-selling mobile phone in the United States in February 2000 (the effective priority date for the Patents-in-Suit) was the Nokia 3310.



This device had no WiFi, no Bluetooth, no GPS, and no apps other than the simple built-in programs like games, a calculator, and a currency converter. *Id.* It had a monochrome five-line text display and could send SMS text messages. *Id.* The idea of obtaining and displaying dynamically updated real estate information based on this device's current location was not only not well-understood, routine, or conventional, it was completely unknown. *Id.* Indeed, as explained above, the inventors of the Patents-in-Suit had to combine a personal digital assistant with no communication functionality with a GPS device and also write new specific software to get the two components to operate with a real estate database. Such technology was unknown at the time of the invention.

73.     As Dr. Garlick also explains, there were significant shortcomings in conventional methods of shopping for real estate that were solved by the innovations of the Patents-in-Suit. *Id.* ¶ 12.   In particular, the Patents-in-Suit integrate technological components—a database, geolocation, a mobile device with an improved user interface, and in certain claims dynamically updated information—to provide real estate services that were not previously available. *Id.*

17

Previously, a real estate agent assisting with a search was required to manually search a database or printed resources on behalf of a client and present search results either over the phone or in person.  *Id.*  Conveying searches over the phone precluded the use of visuals—such as the icons claimed by the Patents-in-Suit—to assist the buyer in evaluating the search results.  *Id.*  If the presentation of search results lacked visuals or detailed information, the search results inevitably led to showing properties that the prospective buyer would reject on first sight.  *Id.*  The problem was ameliorated through pictures or additional information available from a dynamically updated database.  *Id.*  Accessing information from a dynamically-updated database also lessened the concern of showing up at a property for sale to find that circumstances concerning the property had changed—for example, the property had been sold, or the price had changed.  *Id.*  In short, the conventional approach of presenting less detailed, less frequently updated information or information over the phone inevitably resulted in buyers rejecting listings when seen in person, wasting time and effort.

74. Dr. Garlick also explains that, prior to the Patents-in-Suit, a real estate agent and buyer visiting a neighborhood to view a house for sale would often encounter other houses with "For Sale" signs that had not been included in the agent's manual search results.  Garlick Decl. ¶ 13.  Obtaining information about such an unexpected property was cumbersome and unreliable, requiring a phone call to the seller's agent who may not have then been available.  *Id.* With the Patents-in-Suit, information about such a property is available instantaneously using an electronic database, geolocation of the buyer's mobile device, and the mobile device delivering detailed information.  *Id.*  These advantages were not present in the prior art and are only enabled by the innovative integration of technological components, as claimed in the Patents-in-Suit.

75.     The technical innovations of the Patents-in-Suit are embodied in the claims.  Each of the asserted claims requires discrete technological components—an information system, geolocation technology, and a mobile device (with an improved user interface)—that are integrated in a novel and unconventional way to deliver the advantages of the Patents-in-Suit.  *Id.* ¶ 14.

76.     To the extent the inventions of the Patents-in-Suit rely on generic computer components, the specific combination and integration of those components was not routine, conventional, or well-understood at the time of invention.  The Patents-in-Suit describe an unconventional application using a novel integration of technical components.

77.     As discussed above, the inventors of the Patents-in-Suit also recognized the possibility of customized software running on GPS-enabled mobile communication devices years before smartphone apps became commonplace.  *Id.* ¶ 15.  This approach therefore was not routine, conventional, or well-understood.  *Id.*   Rather, the inventors redesigned a personal electronic device to utilize technology in a new and innovative way.  *Id.*

78.     Beyond the use of personal electronic devices to transmit and obtain location-specific information, the inventors recognized an unconventional and improved interface would provide further utility by enabling a user to obtain different types of information—specifically graphical information—about properties of interest.  *Id.* ¶ 16.  Graphics have become critical in the sale and marketing of real estate, and the inventors recognized the possibility of obtaining instantaneous graphical information about properties while a device user is out in the field.  *Id.* The Patents-in-Suit thus describe a particular manner of summarizing and presenting information using electronic devices that was not routine, conventional, or well-understood at the time of invention.  *Id.*

79.     The use of geolocation, a dynamic database, and a user interface to obtain information about not only a specific property of interest but similar properties was also not routine, conventional, or well-understood at the time of invention.  *Id.* ¶ 17.  Not only could real estate agents not provide such information reliably by telephone, but the now-commonplace concept of a "similar search" or "suggested search" was not well-known at the time of invention. *Id.*  The inventors recognized that the integrated technology of the Patents-in-Suit could be used to provide more, and better, information that would assist a user in searching for real estate.  *Id.*

80.     In addition, certain claims of the Patents-in-Suit are directed to technology that provides the ability for users to provide reviews via mobile electronic devices, which further updates the database of information concerning properties.  This further enhances the reliability and quantity of information available to other users via the information system.  *Id.* ¶ 18.  This improvement in the value of resources based on the increased number of participants is an example of the phenomenon known as the "network effect."  *Id.*  The network effects enabled by the Patents-in-Suit were not routine, conventional, or well-understood at the time of invention.

81.     Claim 1 of the '317 Patent recites:

> 1.  A non-transitory processor-readable medium storing code representing instructions to be executed by a processor, the code comprising code to cause the processor to:
>
> receive at a mobile electronic device from an information system information related to a geographic location associated with a position of the mobile electronic device and defined within a base grid of the information system, the information including a plurality of location identifiers, the information system being at a geographic location remote from the geographic location of the mobile electronic device, the information system including a database including information related to a plurality of properties for sale and configured to be dynamically updated to associate information related to each property for sale from the plurality of properties for sale to a geographic location defined within the base grid;

transmit from the mobile electronic device to the information system a selection of at least one location identifier from a plurality of location identifiers, each location identifier from the plurality of location identifiers associated with a unique street address of a property for sale located proximate to the geographic location associated with the position of the mobile electronic device;

receive at the mobile electronic device, from the information system, data associated with the selected location identifier including a plurality of selectable icons configured to initiate a search for additional information associated with the selected location identifier; and

transmit from the mobile electronic device to the information system data associated with a selection of a selectable icon from the plurality of selectable icons.

82.     The claim limitation "a database including information related to a plurality of properties for sale and configured to be dynamically updated to associate information related to each property for sale from the plurality of properties for sale to a geographic location defined within the base grid" corresponds to the inventive concept of providing a user device with access to current information via dynamic updating of information in a database.  Garlick Decl. ¶ 20.  As discussed above, this feature was a vast improvement over conventional search systems that relied on static information.  *Id.*  Importantly, these advantages are recognized in the patent specification, showing these advantages were understood by the inventors.  *See, e.g.*, '317 Patent at 20:4-24.

83.     The claimed database of Claim 1 that references dynamic updates and a base grid corresponds to at least some of the features of the spatial information grid database described by the '317 Patent.  Garlick Decl. ¶ 21.  These features are an improvement over the routine and conventional approach to real estate databases at the time of filing the '317 Patent.  *Id.*

84.     Further, the claim limitation "receive at a mobile electronic device from an information system information related to a geographic location associated with a position of the mobile electronic device and defined within a base grid of the information system, the information

including a plurality of location identifiers, the information system being at a geographic location remote from the geographic location of the mobile electronic device" shows the inventive concept of geolocation for the purposes of obtaining location-specific information. Garlick Decl. ¶ 22. This aspect is also an improvement over conventional, unreliable methods of incorporating a specific location into a real estate search. *Id.* These advantages, too, are delineated in the specification and recognized by the inventors. *See, e.g.*, '317 Patent at 17:20-48.

85.     This system of the '317 Patent overcame many technical problems in conventional searches, in which a customer was required to orally convey a location to a real estate agent and the real estate agent had to consult static information sources to manually identify nearby properties. Garlick Decl. ¶ 23. This conventional search process had myriad reliability problems, as explained above. The specification again recognizes this advantage of the claimed methods and system. *See, e.g.*, '317 Patent at 18:23-48.

86.     In sum, the Patents-in-Suit are thus drawn to patent-eligible subject matter.

87.     The foregoing allegations regarding the '317 Patent are applicable to each of the Patents-in-Suit to the extent those Patents-in-Suit claim the same or similar features to those claimed by the '317 Patent.

## COUNT I: INFRINGEMENT OF THE '628 PATENT

88.     Smarter Agent repeats and re-alleges the allegations of the above paragraphs as if fully set forth herein.

89.     The '628 Patent includes 21 claims. '628 Patent at 20:57–24:25.

90.     Defendants directly infringed one or more method claims of the '628 Patent without authority at least by using, including without limitation developing and testing, products and

systems, including by way of example, the Accused System. *See* Claim Chart for the '628 Patent, attached as Exhibit I.

91.     Defendants directly infringed, either literally or under the doctrine of equivalents, at least Claim 19 of the '628 Patent at least by using the Accused System. *Id.*

92.     Plaintiff is only asserting method claims for the '628 Patent. The damages period for the '628 Patent is from the date of issue of the '628 Patent or the date of Defendants' first infringement of the '628 Patent, whichever is later, to the expiration of the '628 Patent.

93.     Defendants' acts of infringement occurred within this District and elsewhere throughout the United States.

94.     Smarter Agent has been damaged by Defendants' infringement of the '628 Patent.

## COUNT II: INFRINGEMENT OF THE '550 PATENT

95.     Smarter Agent repeats and re-alleges the allegations of the above paragraphs as if fully set forth herein.

96.     The '550 Patent includes 14 claims. '550 Patent at 20:61–22:43.

97.     Defendants directly infringed one or more method claims of the '550 Patent without authority by at least using, including without limitation developing and testing, products and systems, including by way of example, the Accused System. *See* Claim Chart for the '550 Patent, attached as Exhibit J.

98.     Defendants directly infringed, either literally or under the doctrine of equivalents, at least Claim 8 of the '550 Patent at least by using the Accused System. *Id.*

99.     Plaintiff is only asserting method claims for the '550 Patent. The damages period for the '550 Patent is from the date of issue of the '550 Patent or the date of Defendants' first

infringement of the '550 Patent, whichever is later, to the present, plus the time period of any future infringement through the expiration of the '550 Patent.

100.     Defendants' acts of infringement occurred within this District and elsewhere throughout the United States.

101.     Smarter Agent has been damaged by Defendants' infringement of the '550 Patent.

## COUNT III: INFRINGEMENT OF THE '584 PATENT

102.     Smarter Agent repeats and re-alleges the allegations of the above paragraphs as if fully set forth herein.

103.     The '584 Patent includes 16 claims.  '584 Patent at 21:9–24:32.

104.     Defendants directly infringed one or more method claims of the '584 Patent without authority at least by using, including without limitation developing and testing, products and systems, including by way of example, the Accused System.  *See* Claim Chart for the '584 Patent, attached as Exhibit K.

105.     Defendants directly infringed, either literally or under the doctrine of equivalents, at least Claim 12 of the '584 Patent at least by using the Accused System.  *Id.*

106.     Plaintiff is only asserting method claims for the '584 Patent.  The damages period for the '584 Patent is from the date of issue of the '584 Patent or the date of Defendants' first infringement of the '584 Patent, whichever is later, to the expiration of the '584 Patent.

107.     Defendants' acts of infringement occurred within this District and elsewhere throughout the United States.

108.     Smarter Agent has been damaged by Defendants' infringement of the '584 Patent.

## COUNT IV: INFRINGEMENT OF THE '317 PATENT

109.     Smarter Agent repeats and re-alleges the allegations of the above paragraphs as if fully set forth herein.

110.     The '317 Patent includes 20 claims.  '317 Patent at 21:43–24:53.

111.     Defendants directly infringed one or more claims of the '317 Patent without authority at least by making and using, including without limitation developing and testing, products and systems, including by way of example, the Accused System.  *See* Claim Chart for the '317 Patent, attached as Exhibit L.

112.     Defendants directly infringed, either literally or under the doctrine of equivalents, at least Claim 1 of the '317 Patent at least by making and using the Accused System.  *Id.*

113.     Defendants' acts of infringement occurred within this District and elsewhere throughout the United States.

114.     Smarter Agent has been damaged by Defendants' infringement of the '317 Patent.

## COUNT V: INFRINGEMENT OF THE '371 PATENT

115.     Smarter Agent repeats and re-alleges the allegations of the above paragraphs as if fully set forth herein.

116.     The '371 Patent includes 6 claims.  '371 Patent at 12:25–13:2.

117.     Defendants directly infringed one or more method claims of the '371 Patent without authority at least by using, including without limitation developing and testing, products and systems, including by way of example, the Accused System.  *See* Claim Chart for the '371 Patent, attached as Exhibit M.

118.     Defendants directly infringed, either literally or under the doctrine of equivalents, at least Claim 1 of the '371 Patent at least by using the Accused System.  *Id.*

119.     Plaintiff is only asserting method claims for the '371 Patent.  The damages period for the '371 Patent is from the date of issue of the '371 Patent or the date of Defendants' first infringement of the '371 Patent, whichever is later, to the expiration of the '371 Patent.

120.     Defendants' acts of infringement occurred within this District and elsewhere throughout the United States.

121.     Smarter Agent has been damaged by Defendants' infringement of the '371 Patent.

## COUNT VI: INFRINGEMENT OF THE '333 PATENT

122.     Smarter Agent repeats and re-alleges the allegations of the above paragraphs as if fully set forth herein.

123.     The '333 Patent includes 12 claims.  '333 Patent at 12:56–14:41.

124.     Defendants directly infringed one or more method claims of the '333 Patent without authority at least by using, including without limitation developing and testing, products and systems, including by way of example, the Accused System.  *See* Claim Chart for the '333 Patent, attached as Exhibit N.

125.     Defendants directly infringed, either literally or under the doctrine of equivalents, at least Claim 7 of the '333 Patent at least by using the Accused System.  *Id.*

126.     Plaintiff is only asserting method claims for the '333 Patent.  The damages period for the '333 Patent is from the date of issue of the '333 Patent or the date of Defendants' first infringement of the '333 Patent, whichever is later, to the expiration of the '333 Patent.

127.     Defendants' acts of infringement occurred within this District and elsewhere throughout the United States.

128.     Smarter Agent has been damaged by Defendants' infringement of the '333 Patent.

## COUNT VII: INFRINGEMENT OF THE '795 PATENT

129.    Smarter Agent repeats and re-alleges the allegations of the above paragraphs as if fully set forth herein.

130.    The '795 Patent includes 22 claims.  '795 Patent at 7:56–10:23.

131.    Defendants directly infringed one or more method claims of the '795 Patent without authority at least by using, including without limitation developing and testing, products and systems, including by way of example, the Accused System.  *See* Claim Chart for the '795 Patent, attached as Exhibit O.

132.    Defendants directly infringed, either literally or under the doctrine of equivalents, at least Claim 19 of the '795 Patent at least by using the Accused System.  *Id.*

133.    Plaintiff is only asserting method claims for the '795 Patent.  The damages period for the '795 Patent is from the date of issue of the '795 Patent or the date of Defendants' first infringement of the '795 Patent, whichever is later, to the expiration of the '795 Patent.

134.    Defendants' acts of infringement occurred within this District and elsewhere throughout the United States.

135.    Smarter Agent has been damaged by Defendants' infringement of the '795 Patent.

## COUNT VIII: INFRINGEMENT OF THE '199 PATENT

136.    Smarter Agent repeats and re-alleges the allegations of the above paragraphs as if fully set forth herein.

137.    The '199 Patent includes 22 claims.  '199 Patent at 7:63–10:22.

138.    Defendants directly infringed one or more method claims of the '199 Patent without authority at least by using, including without limitation developing and testing, products and

systems, including by way of example, the Accused System. *See* Claim Chart for the '199 Patent, attached as Exhibit P.

139.    Defendants directly infringed, either literally or under the doctrine of equivalents, at least Claim 19 of the '199 Patent at least by using the Accused System. *Id.*

140.    Plaintiff is only asserting method claims for the '199 Patent. The damages period for the '199 Patent is from the date of issue of the '199 Patent or the date of Defendants' first infringement of the '199 Patent, whichever is later, to the expiration of the '199 Patent.

141.    Defendants' acts of infringement occurred within this District and elsewhere throughout the United States.

142.    Smarter Agent has been damaged by Defendants' infringement of the '199 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Smarter Agent respectfully requests that the Court enter judgment as follows:

A.    Declaring that Defendants infringed the Patents-in-Suit;

B.    Awarding damages in an amount to be proven at trial, but in no event less than a reasonable royalty for Defendants' infringement including pre-judgment and post-judgment interest at the maximum rate permitted by law;

C.    Ordering an award of reasonable attorneys' fees against Defendants to Smarter Agent as provided by 35 U.S.C. § 285;

D.    Awarding expenses, costs, and disbursements in this action against Defendants, including prejudgment interest; and

E.    Awarding such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby demands trial by jury in this action of all

claims so triable.

Dated: January 14, 2022     Respectfully submitted,

            By: _Michael Smith_

            Michael C. Smith
            Texas Bar No. 18650410
            Michael.smith@solidcounsel.com
            Scheef & Stone, LLP
            113 E. Austin Street
            Marshall, TX 75671
            Telephone: 903-838-8900
            Facsimile: 972-767-4620

            Robert R. Brunelli
            (to be admitted *pro hac vice*)
             rbrunelli@sheridanross.com
            Matthew C. Holohan
            (to be admitted *pro hac vice*)
             mholohan@sheridanross.com
            Patrick A. Fitch
            (to be admitted *pro hac vice*)
             pfitch@sheridanross.com
            SHERIDAN ROSS P.C.
            1560 Broadway, Suite 1200
            Denver, CO 80202
            Telephone: 303-863-9700
            Facsimile: 303-863-0223
            litigation@sheridanross.com

            *Attorneys for Plaintiff Smarter Agent, LLC*